UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

GEORGE JARVIS AUSTIN, Plaintiff,

**LETTER TO FBI; DOJ ,** *(Interwoven Public-Private Corruption***);** In honor of sec. 19**81**, of Title 42 in the United States Code derived from the Civil rights Act of 1866 as well as US Const. 13th, 14th Amendments, 18 USC 241 & 242

v.

TESLA MOTORS, INC, (TESLA, or TSLA as publicly Traded), et. al. Defendants.

Case No. **3:23-cv-00067-AGT**

**George Jarvis Austin, Plaintiff (Self-represented)**
**2107 Montauban Ct., Stockton, CA**
**209.915.6304,**
**gaustin07@berkeley.edu**

**Note:  Mr. George Jarvis Austin has ownership in Tesla, but as a Pro Se Litigant, and individual person, does not have to disclose his ownership interest.**

"[A] pro se [filing], .. must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007))  Mr. Austin's, self-represented Plaintiff with limited resources, technology is not currently allowing the showing of line numbering although he has repeatedly attempted to correct the technological issue (it is unintentional, and shall be corrected as soon as possible).

George Jarvis Austin, Plaintiff (Self-represented)
Austin v. Tesla Motors, Inc. Case No. 3:23-cv-00067-AGT
2107 Montauban Ct., Stockton, CA
209.915.6304, gaustin07@berkeley.edu

## LETTER TO FBI; JUSTICE DEPT. (DOJ) & OTHER INTERESTED INVESTIGATORY PARTIES; (*Interwoven Public-Private Corruption*).

Greetings: Federal Bureau of Investigation (FBI), US Department of Justice Criminal Civil Rights Division, Securities and Exchange Commission, and Department of Labor, Other Interested Investigators, Enforcement

1.      My name is George Jarvis Austin and as a whistleblower I have kept you abreast of the developments in this matter for a while.  Thank you for your work thus far I have attested that criminal investigations on TSLA, or its co-conspirators, which cannot be confirmed or denied, at present.  However, as a whistleblower I will keep you in the loop informationally.  I am currently suing Tesla Motors, Inc. (TSLA) in its ongoing facially discriminatory, criminal, perjurious (lies-omissions to state official; TSLA's knowing, mens rea, falsification of injury-OSHA records to prolong severe workplace injuries), multiple TSLA agents engaged in admitted conspiracy to deprive Mr. Austin's Federal Rights (*in an ongoing manner*), and illegal other conduct not only in violation of civil statutes-common law, but Federal Criminal Statutes.   See attached;  See 18 USC §241 Conspiracy Against Rights: (Unlike most conspiracy statutes, §241 does not require, as an element, the commission of an overt act); 18 USC §242 Deprivation of Rights Under Color of Law:

> (This provision makes it a crime for someone acting under color of law to willfully deprive a person of a right or privilege protected by the Constitution or laws of the United States. It is not necessary that the offense be motivated by racial bias or by any other animus. Defendants act under color of law when they wield power vested by a government entity. Those prosecuted under the statute typically include …other government actors, such as judges, … other public officials…can also act under color of law and can be prosecuted under this statute.)

See Austin v. Tesla Motors, Inc. Case Number: 3:23-cv-00067-AGT (see attached).

George Jarvis Austin, Plaintiff (Self-represented)
Austin v. Tesla Motors, Inc. Case No. 3:23-cv-00067-AGT
2107 Montauban Ct., Stockton, CA
209.915.6304, gaustin07@berkeley.edu

2.      Early in my learnings and development Kathleen McGovern, as a US

Department of Justice Supervising Litigation Chief, and White Collar- Corruption

Expert taught me, Mr. Austin that Public Corruption is far and away the leader in

White Collar criminal prosecutions (*i.e. judges, other elected and appointed public

officials*), and many times are interwoven with some private actor(s) seeking

advantage, *greedily*.  Greed not only is a powerful motivator, but *often* blinds the

vision of the illegal actors (blind spots prosecutors, or plaintiffs, utilize to bring

justice).  DOJ Litigation Chief McGovern utilized an extremely practical approach

to teach Mr. Austin *how to:* a. effectively build a case b. gather material evidence c.

proactively utilize a variety of techniques to induce essential disclosures of key

witnesses, information, and leads d. read between the lines of public and private

actors to discern acts that further civil, or criminal, conspiracies e. effectively

recognize the typical '*tells*,' and patterns, of conspirators, and f. utilize some public

and private remedies in the interests of those victimized by both powerful public

and private white collar illegal actors (*as well as some other inside baseball*).

3.      The wisdom-instruction DOJ Litigation Chief McGovern provided to Mr.

Austin was extraordinarily valuable in this case.  Mr. Austin is extraordinarily

surprised at just how open the TSLA agents-officers are in writing down,

documenting, their openly deceitful, per se violative, criminal, conspiratorial, &

illegal conduct (*with multiple overt admissions, written direct evidence, paper trails,

documentation proving not only the violations themselves, but illegal intent, mens

rea, etc.)* almost as if they wanted to be sued, or prosecuted.  No need for hero ball,

George Jarvis Austin, Plaintiff (Self-represented)
Austin v. Tesla Motors, Inc. Case No. 3:23-cv-00067-AGT
2107 Montauban Ct., Stockton, CA
209.915.6304, gaustin07@berkeley.edu

just the simple plays, taking what the defense is providing (*wide open lanes*).  Mr.

Austin obliges, and abides.

4.      Because the FBI has a particular focus on Public Corruption, especially when

combined with the overlapping, layered, mens rea demonstrating Criminal Civil

Rights violations, I am honoring my word and proactively providing updates (and

will continue to do so) as the case progresses.  The case may settle, but will

proactively provide information.

5.      TSLA concedes before the Tribunal, under its in-house counsel's oath to tell

the truth before the tribunal, that it knowingly, and willingly, committed several

Labor Code, OSHA, Health and Safety code, criminal violations to harm Mr. Austin

and prolong his workplace injury (in writing and verbally).  Although Mr. Austin

diligently worked, and diligently followed up on injury reports (*and formal

complaints*), it appears Tesla Motors Inc. has attempted to "juke the stats" or

manipulate the numbers, data, and information regarding the severity of Mr.

Austin's workplace injury, number of days (*at least 48*) he required augmented work

status( *or workplace restrictions - i.e. needing to sit majority of time per doctor's

orders*), and overall context of injury.  Mr. Austin was seen, and treated, numerous

times after serious injury, and each time was instructed per doctor's orders "**do not

aggravate**." *Do not aggravate* means per the Tesla medical staff and doctors to not

stand longer than 15 or so minutes at a time (typically stand nearly 12 hours

straight with exception of breaks) to remove pressure from lower body injury, reduce

swelling, reduce sharp or dull pain, to keep legs in rest position as much as possible,

George Jarvis Austin, Plaintiff (Self-represented)
Austin v. Tesla Motors, Inc. Case No. 3:23-cv-00067-AGT
2107 Montauban Ct., Stockton, CA
209.915.6304, gaustin07@berkeley.edu

and to keep compression, ice (when possible), and elevated to encourage healing.

Tesla Motors, Inc. Medical Clinic issued Mr. Austin medical grade knee braces, for

both knees, issued pain reliever prescription (although Mr. Austin tries to avoid

taking medication), and ordered two sets of medical imaging all signaling the level

of severity of injury. See Dckt 141: 142:

> "[F]rom the date of Workplace Injury, November 2019, until separation from Tesla Motors, Inc. Mr. Austin remained severely injured, and in need of Tesla medical clinic ordered augmented work schedule accommodations ([per] continued doctors orders "do not aggravate." Do not aggravate means per the Tesla medical staff and doctors to not stand longer than 15 or so minutes at a time (typically stand nearly 12 hours straight with exception of breaks) to remove pressure from lower body injury, reduce swelling, reduce sharp or dull pain, to keep legs in rest position as much as possible, and to encourage healing. The rest (or do not aggravate) position, in a Tesla Workplace context (though not ideal due to nature of injury) is in a sitting position or with legs elevated, simultaneously, or alternatively, which helps facilitate the leg exhibiting much less pain. Mr. Austin shall separately include [redacted] Tesla Clinic doctors orders from early injury dates, to end toward separation, which confirm injury and needs (including further medical testing due to severity of injury)."

Dckt. 142:

> "Mr. George Jarvis Austin notes from the date of Workplace Injury, November 2019, until present day April 2024, after separation from Tesla Motors, Inc. (with no intervening leg injuries) Mr. Austin remains severely injured. Tesla medical clinic ordered augmented work and life schedule accommodations "do not aggravate" still apply as Mr. Austin still cannot stand longer than 30 minutes or so without discomfort and pain despite no new intervening. Mr. Austin still has to abide by the "do not aggravate" guidelines per the Tesla medical staff and doctors to not stand longer than 15-30 or so minutes at a time to remove pressure from lower body injury, reduce swelling, reduce sharp or dull pain, to keep legs in rest position as much as possible, and to encourage healing (although injured area bruising and discoloration under the skin has been much slower to heal as it is connected to soft tissue injuries). Mr. Austin is willing to undergo physical medical examination, along with additional soft tissue imaging, on the injured areas (both legs) and analysis-testing to further substantiate the full ramifications of these current ongoing workplace injuries from work at Tesla Motors, Inc."

6.    It's unclear from the Defendant Tesla Motor's disclosed information if the

level of severity was accurately recorded by Tesla anywhere (outside of

conversations with Mr. Austin and Jose Mendiola and emails with other key Tesla

management) despite the law requiring it to be precisely done and maintained for 5

years thereafter.  Mr. Austin's supervisor and his supervisor's supervisor both were

fully aware, reaffirmed in writing, and accommodated Mr. Austin's serious

workplace injury for at least 48 days (*both representing Tesla Motors Inc.*

George Jarvis Austin, Plaintiff (Self-represented)
Austin v. Tesla Motors, Inc. Case No. 3:23-cv-00067-AGT
2107 Montauban Ct., Stockton, CA
209.915.6304, gaustin07@berkeley.edu

*management, with one his supervisor sharing that he directly communicates with Elon Musk weekly as part of his regular duties for his role*.).  Tesla management noted some of Mr. Austin's Tesla Medical Clinic treatment, and follow up, appointments on 11/28/19, follow up appointments on  12/03/19., 12/05/19, 12/31/19, 01/06/20, 1/07/20, 1/11/20, 01/13/20, 1/14/20, 1/28/20 (scheduled but blocked from attending once badge deactivated, and blackballing Mr. Austin began).  Several appointments appear to be missing in December, and no X-ray results, nor orders for MRI (nor the justification for MRI orders showing ongoing serious injury, and pain) were included in Defendant Tesla Motors, Inc. disclosures.  Mr. Austin is withholding jumping to the conclusion that Tesla Motors, Inc., in conjunction with all of the above mentioned Tesla personnel purposefully falsified all of Mr. Austin's injury information to sabotage him, however the evidence points strongly in this direction (especially in light of other related Tesla Motors, Inc. behaviors-conduct). Tesla Motors, Inc. defendant disclosures did appear to include some sort of IRIS injury reporting number to correspond with IRIS Link: warpdrive.teslamotors.com/ehs/, but is very unclear as to what exactly this corresponds to and what exactly was included in the injury report.

> "Juking the stats… You juke the stats and majors become colonels…
>
> ….wherever you go there you are."
> - ***The Wire,*** **'Prezbo' with fellow Teacher discussing data manipulation and misalignment of incentives structure with enforcement agencies.**

7.     It appears Tesla Motors, Inc. "juked the stats" with regard to Mr. Austin's serious, and *ongoing* workplace injuries.  Mr. Austin's concerns (*after incurring severe on the job injury at Tesla Motors, Inc. requiring medical treatment beyond*

George Jarvis Austin, Plaintiff (Self-represented)
Austin v. Tesla Motors, Inc. Case No. 3:23-cv-00067-AGT
2107 Montauban Ct., Stockton, CA
209.915.6304, gaustin07@berkeley.edu

*first aid, and augmented work schedule*) and reasons for concerns around Tesla's proper recording in personnel file including of injury per OSHA, FLSA, and CA Labor Code requirements are a. well founded b publicly documented, and c. prompted initial and subsequent over 50 complaints as Tesla has a (*publicly documented*) history of being cited, fined and punished for fraud and deception ("*juking the stats*") with ignoring, or under reporting, injuries and unsafe working conditions.  According to various reports, and testimony from medical experts at Tesla Onsite Clinic , *"Injured employees have been systematically sent back to the production line to work through their pain with no modifications, according to former clinic employees, Tesla factory workers and medical records. Some could barely walk…The on-site medical clinic serving some 10,000 employees at Tesla Inc.'s California assembly plant has failed to properly care for seriously hurt workers, an investigation by Reveal from The Center for Investigative Reporting has found…..The clinic's practices are unsafe and unethical, five former clinic employees said….But denying medical care and work restrictions to injured workers is good for one thing: making real injuries disappear."* revealnews.org/article/inside-teslas-factory-a-medical-clinic-designed-to-ignore-injured-workers/; See e.g. revealnews.org/blog/tesla-hit-by-government-investigation-after-reveal-story/

(Tesla hit by government investigation after Reveal story…..Tesla officials Laurie Shelby (left) and Gaby Toledano read the concerns of then-safety lead Justine White, who emailed CEO Elon Musk's chief of staff in 2016. "I know what can keep a person up at night regarding safety," she wrote. "I must tell you that I can't sleep here at Tesla.".…California's workplace safety agency opened an investigation of Tesla Inc. on Tuesday, the day after Reveal from The Center for Investigative Reporting published an investigation of safety problems and unreported injuries at the carmaker's Fremont factory……

Reveal found that Tesla **did not count all of its work injuries as required by law, making its safety record look better than it actually is**.…"Cal/OSHA takes seriously reports of workplace hazards and allegations of employers' **underreporting recordable work-related injuries** and illnesses," said Erika Monterroza,

George Jarvis Austin, Plaintiff (Self-represented)
Austin v. Tesla Motors, Inc. Case No. 3:23-cv-00067-AGT
2107 Montauban Ct., Stockton, CA
209.915.6304, gaustin07@berkeley.edu

spokeswoman for the state Department of Industrial Relations, which includes the Division of Occupational Safety and Health, known as Cal/OSHA.....Cal/OSHA has cited Tesla for more than 40 health and safety violations since 2013. This year, the agency cited the company for failing to provide employees with effective information and training on chemical hazards in their work areas, as well as failing to "effectively assess the workplace" for chemical hazards.)

revealnews.org/article/inside-teslas-factory-a-medical-clinic-designed-to-ignore-injured-workers/

(INSULT TO INJURY - Inside Tesla's factory, a medical clinic designed to ignore injured workers …. Former Tesla worker Stephon Nelson clutches his back as he climbs steps outside his girlfriend's home in Oakland, Calif. He was injured in August while working in the trunk of a Model X. Something slipped and its hatchback crunched down on his back.  … **When a worker gets smashed by a car part on Tesla's factory floor, medical staff are forbidden from calling 911 without permission**.

The electric carmaker's contract doctors rarely grant it, instead often insisting that seriously injured workers – including one who severed the top of a finger – be sent to the emergency room in a Lyft….**Injured employees have been systematically sent back to the production line to work through their pain with no modifications, according to former clinic employees, Tesla factory workers and medical records. Some could barely walk.**

The on-site medical clinic serving some 10,000 employees at Tesla Inc.'s California assembly plant has **failed to properly care for seriously hurt workers, an investigation by Reveal from The Center for Investigative Reporting has found…..The clinic's practices are unsafe and unethical, five former clinic employees said….But denying medical care and work restrictions to injured workers is good for one thing: making real injuries disappear**. "*The goal of the clinic was to **keep as many patients off of the books as possible**,*" said Anna Watson, a physician assistant who worked at Tesla's medical clinic for three weeks in August…..Watson has nearly 20 years of experience as a medical professional)

revealnews.org/blog/tesla-fired-safety-official-for-reporting-unsafe-conditions-lawsuit-says

(Tesla fired safety official for reporting unsafe conditions… A former high-level safety official at Tesla Inc. has sued the company for **failing to treat injured employees and for misclassifying work injuries to avoid reporting them as required by law**...Carlos Ramirez, a director of environment, health, safety and sustainability at Tesla until June 2017, alleges he was fired in retaliation for reporting unsafe working conditions, such as chemical exposures and fires, and for refusing to go along with what he believed to be illegal practices….After he came to Tesla, Ramirez and his team audited the company's internal injury tracking system, the suit says. The 2017 audit "revealed numerous instances of lack of treatment of Tesla employees that suffered workplace injuries, recordkeeping violations, and improper classification of workplace injuries to avoid treating and reporting workplace injuries," it says.)

8.      Perhaps one of the reasons behind Jose Mendiola's, and Steve Anderson's, admitted deceit with Mr. Austin was that he knew, or participated in "juking the stats" with regard to Mr. Austin's workplace injury and did not want Mr. Austin to discover the extent of the *ongoing* deceit in real time.   Jose Mendiola admitted deceit with Mr. Austin stating "*I told him (referring to Mr. George Jarvis Austin)*

George Jarvis Austin, Plaintiff (Self-represented)
Austin v. Tesla Motors, Inc. Case No. 3:23-cv-00067-AGT
2107 Montauban Ct., Stockton, CA
209.915.6304, gaustin07@berkeley.edu

_they [injury reports] are confidential_ (when in fact they are not, and every employer

owes duty to injured worker to show that worker their injury reports_)._" On 1.6.20, 3

minutes later, at 11:17am, Instead of Steve Anderson (Tesla Management),

correcting Jose per his own management duties, he admits that he too violated

Department of Industrial Relations and OSHA's, c_ontrolling laws (as well as Tesla_

_Motors Inc. policies)_ when he responded with "_Copy, that sounds reasonable._"

**TESLA_ GA002357-TESLA_GA002359**

From: Jose Mendiola <jomendiola@tesla.com>
Sent: Sunday, **December 15, 2019 5:49:23 AM**
To: George Austin [C] <geaustin@tesla.com>; Steve Andersen <standersen@tesla.com>
Subject: **RE: Kronos**

George,
I have now been handed your Kronos timecard. Let's discuss these at the desk….

Below I have answered a few of your concerns <span style="color:red">inred.</span>
----
…..On a slightly different note - My leg/knee[s[ is still a bit sore from injury at work on 11/28, and the pain level has
somewhat increased so am going back to ask them to set up an Xray, this week, so that I can make sure there's been
no other undetected injury that could cause long term harm. My calf muscle tightens up periodically from a
basketball injury when I was younger (I tore my calf muscle from over-training via plyometrics/explosive [exercises]
), and learned from that experience to ensure proper examination, diagnosis and recovery.

Lastly, I will still need an amended station rotation schedule, where I can sit to take pressure of the knee[s] as the
doctor recommended, similar to present, until fully healed and cleared.

<span style="color:red">We will still keep accommodating for your work status.</span>"

**TESLA_GA001610**

From: George Austin [C] <geaustin@tesla.com>
Sent: Wednesday, **January 1, 2020** 2:42 PM
To: Jose Mendiola <jomendiola@tesla.com>
Cc: Joseph Genson <jogenson@tesla.com>; Steve Andersen <standersen@tesla.com>
Subject: Health Center Email - Forward (MRI, X-ray)

Good morning, and Happy New Year, Jose

I hope this finds you phenomenally well and blessed beyond measure (as am I).

Can you forward the email sent to you for my records _[i.e. full personnel file; injury reports]_, and so that I can reply
for the MRI, X-ray needs.

As a reminder I'm still on do not [aggravate], light(er) duty, rotation until cleared by the tests and eval (to ensure no
long term damage, and full health).

Thank you,
George J. Austin,"

George Jarvis Austin, Plaintiff (Self-represented)
Austin v. Tesla Motors, Inc. Case No. 3:23-cv-00067-AGT
2107 Montauban Ct., Stockton, CA
209.915.6304, gaustin07@berkeley.edu

**TESLA_GA001605 -**

From: George Austin [C] <geaustin@tesla.com>
Sent: Monday, **January 06, 2020** 9:31 AM UTC
To: George Austin [C] <geaustin@tesla.com>; Amir Sharifi <asharifi@tesla.com>; Jordan Hetherington <johetherington@tesla.com>
CC: Jose Mendiola <jomendiola@tesla.com>; Steve Andersen <standersen@tesla.com>; Joseph Genson <jogenson@tesla.com>
Subject: Email for Health Center, MRI/X-RAY needs, & copy of medical records/communication

Good Evening, Amir & Jordan

I hope this finds you phenomenally well and blessed beyond measure (as am I).

Can you send me a copy of my medical records and communication regarding them thus far at the Health Center?

As the patient I am privy to them? (Privacy is regarding others viewing them, not the patient themselves).

Also, do you have a direct email for the Health Center?

Lastly, the doctor agreed last time I spoke, but want to formally request in writing both an MRI & X-ray as the pain level has increased even with me doing what's necessary to not aggravate and encourage full healing? Is emailing you sufficient, or do I need follow up further?

Thank you,
George J. Austin,"

**TESLA_GA001610**

From: Steve Andersen <standersen@tesla.com>
Sent: Monday, **January 6, 2020** 2:04 AM
To: Jose Mendiola <jomendiola@tesla.com>
Subject: RE: Health Center Email - Forward (MRI, X-ray)

Did you get something from the health center?

Steve Andersen | Production Associate Manager | BIW3
45000 Fremont Blvd | Fremont CA 94538
c 510.240.0301 | standersen@tesla.com

From: Jose Mendiola
Sent: Monday, **January 06, 2020** 11:16 AM UTC
To: Steve Andersen <standersen@tesla.com>
Subject: RE: Health Center Email - Forward (MRI, X-ray)

Negative, I only have his follow up appointment for tomorrow 1/6/2020.

He asked me to forward the papers from the health center.

**I told him they are confidential.**

He is still asking about an MRI or X-ray…

**TESLA_GA001611**

From: Steve Andersen <standersen@tesla.com>
Sent: Monday, **January 06, 2020** 11:17 AM UTC
To: Jose Mendiola <jomendiola@tesla.com>
Subject: RE: Health Center Email - Forward (MRI, X-ray)

**Copy. That sounds reasonable…[...]**

Steve Andersen | Production Associate Manager | BIW3
45000 Fremont Blvd | Fremont CA 94538

9 ; **LETTER TO FBI; DOJ.**

George Jarvis Austin, Plaintiff (Self-represented)
Austin v. Tesla Motors, Inc. Case No. 3:23-cv-00067-AGT
2107 Montauban Ct., Stockton, CA
209.915.6304, gaustin07@berkeley.edu

c 510.240.0301 | standersen@tesla.com

9.      Broadly speaking, publicly traded *Tesla Motors, Inc. [TSLA]*, is currently engaged in repeated, egregious, malicious, and criminal ongoing violations of CA's, and Federal, Labor Code minimum standards of conduct for Employers (joint, or sole) toward workers as they failed to provide personnel file in 30 days or less after repeated requests over multi-year timeframe (over 1,000+ days) , admitted failing to maintain or willfully destroying mandatory timekeeping, health and safety, workplace injury, records, and violated anti-retaliation (including blackballing) provisions when Mr. Austin escalated formal complaints after personally observing illegal conduct, as well as other per se Labor Code (Fed, and CA) violations.   TSLA is violating 42 USC sec. 1981 by engaging in repeated use of derogatory stereotypes, racist name calling, and slurs, including "n*gg*r" the most insulting derogatory racial slur in the American Lexicon, fostering an extreme publicly documented hostile work environment at Tesla Factory in Fremont, non-responsiveness, and retaliation, to complaints of illegal TSLA conduct when the person making complaints is a Black worker, blacklisting and blackballing based on false promulgated derogatory racist stereotypes.   TSLA is acting in Bad Faith, Deceit, and with Gross, and Per Se, Negligence by willfully violating a host of duties owed Mr. Austin, with illegal extraneous conduct to frustrate the benefit of the employment agreement, with malice, willfulness, and complete disregard of (without even scant care) of Mr. Austin's rights or well-being.   TSLA did so while knowing he was severely injured in a publicly documented hostile work

George Jarvis Austin, Plaintiff (Self-represented)
Austin v. Tesla Motors, Inc. Case No. 3:23-cv-00067-AGT
2107 Montauban Ct., Stockton, CA
209.915.6304, gaustin07@berkeley.edu

environment (combined with the violations mentioned above) showing a complete

lack of good faith (as measured by explicit 30 day standard, along with racist

stereotypical name calling using race as proxy to literally blacklist, blackball , in

publicly documented hostile anti-Black environment as compared to how other

similarly situated persons are treated. See factual synopsis excerpt below for a bit

more detail. See attached filed amended complaint (See attached filed amended

complaint (*after-per Court order dckt. #84.*).

10.     As of May 2024, Mr. Austin noted for the Court that Tesla Motors, Inc.

continues taking 7 separate discrete *ongoing* adverse actions to Mr. Austin's

detriment (*none of which is normal procedure, even for separated workers*) to date

throughout May 2024 including: **1.** order to go out of their way to abnormally block

access to Mr. Austin's Kronos **2.** secret order to Tesla security to abnormally escort

Mr. Austin off of premises if he made his way unto Tesla Motors, Inc., after badge

deactivation (*unbeknownst to Mr. Austin until Defendant disclosures*), but creating

extra stigma and harm to Mr. Austin (*especially when pretext was admittedly false*)

**3**. order to abnormally block Mr. Austin from a. follow up appointments at Tesla

Health Clinic (*despite one scheduled on 1.28.20*), b. his injury records or injury

reporting information, etc. knowing he was still injured, (*despite just receiving MRI*

*doctors orders at 1.14.20-1.15.20 doctor appointment*) **4.** order (abnormal) a. for no

one to communicate or respond to Mr. Austin in Tesla Motors Inc. b. to expressly

blackball, or blacklist him **5.** order (abnormal) a. to not investigate, nor correct, Mr.

Austin's per se record keeping escalated complaints, b. to not provide the result of

George Jarvis Austin, Plaintiff (Self-represented)
Austin v. Tesla Motors, Inc. Case No. 3:23-cv-00067-AGT
2107 Montauban Ct., Stockton, CA
209.915.6304, gaustin07@berkeley.edu

his workplace complaint investigation to Mr. Austin (in violation of TSLA's policies)

c. to purposefully not correct Mr. Austin's Tesla Kronos timekeeping per se legal

errors-violations, d. to not provide his full personnel file nor do any of the other

agreed upon follow up tasks (*so Mr. Austin would have no way of discovering the*

*underhanded illegal maneuvers in real time*) **6.** order destruction of material

evidence (*including Kronos, full personnel file, injury records or reports etc.*)

knowing Mr. Austin had escalated complaints to obtain and correct per se legal

violations in this information,  and review **7.** continues use of race, and

promulgation and use derogatory racial stereotypes causing stigma to Mr. Austin,

while knowing it was used as a false pretext from the beginning (as Sr. Hr Vince

Woodard admitted in his own email).  See Dckt. 160 (AFFIDAVIT *Email*

*Communication with Defendant Counsel Mr. Kim (or as he prefers Tim) requesting*

*him to resend emails of Tesla Leadership admitting false pretext for taking initial,*

*and ongoing discrete, adverse action, continuing until May 2024*):  See also Dckt.

170 (Request for Judicial Notice *that 1. Defendant Tesla Motors, Inc. has recently*

*destroyed material evidence between first mailing of disclosures, and the second*

*(missing hundreds of pages of direct material evidence-facts) and _____ 2. ALL filed*

*SWORN AFFIDAVITS are direct material evidence*)

1. Mr. Austin requests Judicial Notice that Tesla Motors, Inc.has destroyed material direct evidence between the time of Tesla's Partial compliance with 92 Order on Motion to Compel and re-sent, or re-emailed, disclosures-discovery several months later. There appears hundreds of pages missing between the two emailed sets (destroyed direct evidence) of Tesla Motor Inc.'s admitted Factual disclosures (particularly emails to and from Vincent Woodard with other Tesla Leadership where he expressly admits pre-text for multiple discrete adverse actions). Mr. Austin filed an affidavit, as direct material evidence, and notice for the Court, that he requested Mr. Kim, or Tim (as he prefers) to resend only the total group of emails from Sr. HR Officer Vincent Woodard (to and from) as several are missing (or destroyed) between the two groups. See e.g. Dckt. 160 (Sworn Affidavit)

"--------- Forwarded message ---------
From: George Date: Sat, May 18, 2024 at 4:10 AM
Subject: All Vincent Woodard Emails - Discovery To: Timothy Kim Cc: Mindy Maesato

George Jarvis Austin, Plaintiff (Self-represented)
Austin v. Tesla Motors, Inc. Case No. 3:23-cv-00067-AGT
2107 Montauban Ct., Stockton, CA
209.915.6304, gaustin07@berkeley.edu

> Good morning, Tim, or as you may prefer Mr. Kim, and Mindy or as you may prefer Ms. Maesato (excuse any typos or errors sent from a mobile device).
>
> Can you resend all Vincent Woodard emails (both to and from as related to this case) - particularly where Vince Woodard makes the false statement (pre-text) that Mr. Austin was recording without permission in a two-party consent state? (When in fact Mr. Austin has never recorded anyone with or without consent).
>
> Can you ensure that those emails also contains his emails to Mike in security with orders to deactivate Mr. Austin's Tesla badge, Tesla email, etc.?
>
> Best, George Jarvis Austin"

11.     Each of these seven distinct ongoing adverse actions by Tesla Motors, Inc. against Mr. Austin are abnormal, even for separated workers, and were done with open animus, hostility and malice knowing they are breaking the law, but showing willful disregard.  For example, Tesla knows its duty to obtain, accurately record, and maintain Mr. Austin's Kronos at a *minimum of three years after separation*, but purposefully destroyed material evidence knowing that the destruction itself is a per se legal violation (let alone the failure to correct the other per se legal recordkeeping violations).  Tesla knows it is illegal to operate on derogatory racial stereotypes, or race, but still knowingly lied using derogatory stereotypes (*knowing in an anti-Black racially hostile environment their use wouldn't be questioned or checked by others in power), to worsen already retaliatory-discriminatory actions by making an internal secret order to escort Mr. Austin off of the premises presumably just to embarrass, defame, and* humiliate (bullying tactics according to their own policies). See Dckt. 178: (AFFIDAVIT …*(SWORN) per Department of Justice's (DOJ) "Law 101: Legal Guide for the Forensic Expert Legal Requirements of an Affidavit"*____… Tesla Motors Inc. (TSLA) is a bully to Mr. Austin, (and many of its

George Jarvis Austin, Plaintiff (Self-represented)
Austin v. Tesla Motors, Inc. Case No. 3:23-cv-00067-AGT
2107 Montauban Ct., Stockton, CA
209.915.6304, gaustin07@berkeley.edu

Black workers) with ' ongoing' conduct in direct per se violation of the law, and its own policies…):

> "...Tesla Motors Inc. (TSLA) is a bully to Mr. Austin, and many of its Black workers.  Tesla Motors Inc. Employment, and Business ethics, Policies not only provide a certain framework, and minimum threshold for operations under current Federal and California law for current, previous (especially with regard to blackballing based on derogatory stereotypes), or prospective workers, but also makes *clear "... "Tesla does not tolerate abusive conduct, bullying or other intimidating or aggressive behavior towards or among employees or others covered by this Policy, whether it is based on a Protected Class or not….Bullying can include malicious, deliberate, hurtful mistreatment of employees <u>driven by a desire to control</u> that involves repeated acts of <u>humiliation, intimidation and sabotage of performance</u>…"*

12.     Tesla knows Mr. Austin was seriously injured and accommodated his injury for at least 48 days with augmented work schedule or work status.  Tesla Knows Mr. Austin had additional follow up appointments as his pain had worsened, and )doctors just ordered MRI imaging, as he went in after the escalation meeting on 1.14.20-1.15.20, to find out exactly what soft tissues injuries were creating pain and discomfort in both legs from workplace injury (after not being able to fully identify after X-rays).  Tesla knows it is illegal to worsen or block workers from full recovery, but when Mr. Austin was most vulnerable went out of his way block access to his medical records, injury reports, full personnel file and other legally mandated information to be provide to him for the purpose of blocking his injury recovery, blackballing, blacklisting, discrimination and retaliation less than 100 hrs after escalating his formal complaint to Sr.  Hr Officer Woodard.  Ironically, Tesla knows that this conduct is actually criminal conduct for a business, and given Tesla's history of violations would qualify or constitute eligibility for $1.5 million dollar fine, corporate criminal sanctions, and other liability under a variety of California and Federal laws.  See Dckt.181 (AFFIDAVIT ..,, *(SWORN) per Department of Justice's (DOJ) "Law 101: Legal Guide for the Forensic Expert Legal Requirements*

George Jarvis Austin, Plaintiff (Self-represented)
Austin v. Tesla Motors, Inc. Case No. 3:23-cv-00067-AGT
2107 Montauban Ct., Stockton, CA
209.915.6304, gaustin07@berkeley.edu

*of an Affidavit"_____ per se Health and Safety injury recordkeeping - ongoing - violations_____ Tesla is "Juking the stats" - The Wire...)*

" 20.    Tesla's conduct raises its level of liability from Civil to Criminal due its egregiousness, willful repeated violation of occupational safety or health standards, and orders, to cause permanent or prolonged impairment of the body of any worker. Mr. Austin's legs are still injured 4 years after workplace (on the job) injury. See dckt. 141 (AFFIDAVIT *(Sworn-Signed) Workplace Injury)* See dckt. 142 AFFIDAVIT *(Sworn-Signed) 'ongoing' Workplace Injury (without any intervening injury on same area of the body - proximate cause of ongoing injury).* Tesla has not only refused compliance with personnel file, including injury records requirements, but also apparently OSHA/Health and Safety injury reporting requirements, discriminatory conduct to block access (and literal Blackballing) in response *(especially as more than two Tesla employees, and persons, acted in unison to deprive Mr. Austin's constitutional rights 42 USC 1981 right to contract).* See e.g.

Cal. Lab. Code § 6425

"(a) Any employer and any employee having direction, management, control, or custody of any employment, place of employment, or of any other employee, **who willfully violates any occupational safety or health standard, order, or special order, or Section 25910 of the Health and Safety Code**, and that violation caused death to any employee, or **caused permanent or prolonged impairment of the body of any employee**, is guilty of a public offense punishable by imprisonment in a county jail for a term not exceeding one year, or by a fine not exceeding one hundred thousand dollars ($100,000), or by both that imprisonment and fine; or by imprisonment in the state prison for 16 months, or two or three years, or by a fine of not more than two hundred fifty thousand dollars ($250,000), or by both that imprisonment and fine; and in either case, if the defendant is a corporation or a limited liability company, the fine may not exceed **one million five hundred thousand dollars ($1,500,000)**.") See also e.g. Cal. Lab. Code § 6317.8 ("a violation is an "egregious violation" if one or more of the following is true about that employer or the willful violations committed by it: (1) The employer, intentionally, through conscious, voluntary action or inaction, made no reasonable effort to eliminate the known violation........(4) The employer has an extensive history of prior violations of this part......(5) The employer has intentionally disregarded their health and safety responsibilities.....(6) The employer's conduct, taken as a whole, amounts to clear bad faith in the performance of their duties under this part.  (7) The employer has committed a large number of violations so as to undermine significantly the effectiveness of any safety and health program that may be in place."

21.    Multiple sections of the labor code can trigger employer criminal, as well as civil, liability including but not limited to failure to respond within a reasonable period of time following the request for a. review or copies of the personnel file (infraction), or  b. injury reports and records (misdemeanor under willful violations to cause prolonged injury) from being treated onsite, at work, in Tesla Clinic.  See

e.g. Cal. Lab. Code § 6429

"(1) Any employer who willfully or repeatedly violates any occupational safety or health standard (*i.e. refusal to provide required injury, and personnel documents after over 50+ complaints/requests*), order, or special order, or Section 25910 of the Health and Safety Code, or any employer who commits an enterprise-wide violation as specified in Section 6317, may be assessed a civil penalty of not more than one hundred twenty-four thousand seven hundred nine dollars ($124,709) for each violation, but in no case less than eight thousand nine hundred eight dollars ($8,908) for each willful violation.")  See e.g. Su v. Siemens Industry, Inc., No. 12-cv-03743-JST, at *2 (N.D. Cal. July 21, 2014) ("Section 6310 states that "no person shall . . . discriminate against any employee because the employee has" engaged in protected activity (*i.e. over 50+ complaints/requests/inquiry*). Cal. Labor Code § 6310(a) (emphasis added). It goes on to give a cause of action to "[a]ny employee who is . . . discriminated against . . . because the employee has" engaged in protected activity. Cal. Labor Code § 6310(b)")  See e.g. Cal. Lab. Code § 1175 ("Any person, or officer or agent thereof, is guilty of a misdemeanor who: (a) Neglects or refuses to furnish the information requested under the provisions of Section 1174. (b) Refuses access to his place of business or employment to any

George Jarvis Austin, Plaintiff (Self-represented)
Austin v. Tesla Motors, Inc. Case No. 3:23-cv-00067-AGT
2107 Montauban Ct., Stockton, CA
209.915.6304, gaustin07@berkeley.edu

member of the commission or employee of the Division of Labor Standards Enforcement when administering or enforcing this chapter."

22.        These types of violations, along with others, can subject the employer or his agent to monetary penalties and imprisonment under certain portions of the California Labor Code and Division of Labor Standards Enforcement's (DLSE) especially given Tesla's long documented history of violating labor, and health and safety regulations in tandem. See e.g. Cal. Lab. Code § 6310

> "Section 6310 -  discrimination against employee (a) No person shall …in any manner discriminate against any employee because the employee has done any of the following: (1) Made any oral or written complaint to the division, other governmental agencies having statutory responsibility for or assisting the division with reference to employee safety or health, their employer, or their representative.…..(3) Participated in an occupational health and safety committee established pursuant to Section 6401.7. (4) Reported a work-related…injury, or illness, requested access to occupational injury or illness reports and records that are made or maintained pursuant to Subchapter 1 (commencing with Section 14000) of Chapter 1 of Division 1 of Title 8 of the California Code of Regulations, or exercised any other rights protected by the federal Occupational Safety and Health Act (29 U.S.C. Sec. 651 et seq.)(b) Any employee who is …in any … manner discriminated against in the terms and conditions of employment (*including blackballing, or blocking access*) by their employer because the employee has made a bona fide oral or written complaint to the division, other governmental agencies having statutory responsibility for or assisting the division with reference to employee safety or health, their employer, or their representative, of unsafe working conditions, or work practices (*including not providing personnel file and injury records by deadlines*), in their employment or place of employment, or has participated in an employer-employee occupational health and safety committee, shall be entitled to reinstatement and reimbursement for lost wages and work benefits caused by the acts of the employer. Any employer who willfully refuses to rehire, promote, or otherwise restore an employee or former employee who has been determined to be eligible for rehiring or promotion by a grievance procedure, arbitration, or hearing authorized by law, is guilty of a misdemeanor.) See also e.g. Cal. Lab. Code § 6310 ("Any employer who willfully refuses to rehire, promote, or otherwise restore an employee or former employee who has been determined to be eligible for rehiring or promotion by a grievance procedure, arbitration, or hearing authorized by law, is guilty of a misdemeanor.") See also e.g. Cal. Lab. Code § 6426 ("Whoever knowingly makes any false statement, representation (i.e. Mr. Austin's experience of cover up is similar to ***Alfredo Martinez and Justin Page v. Southern California Edison Co. and Edison International Los Angeles Superior Court BC670461 (June 02, 2022) producing largest verdict in U.S. History ($460 million)*** , or certification in any application, record, report, plan, or other document filed or required to be maintained pursuant to this division shall, upon conviction, be punished by a fine of not more than seventy thousand dollars ($70,000), or by imprisonment for not more than six months, or by both."

23.        Since first day of workplace injury at Tesla Motors Inc., Mr. Austin was treated, for more than first aid care, repeatedly at Tesla Clinic.  Tesla Motors, Inc.'s Health and Safety Committee's, Jessica Siron, was included in a variety of the emails regarding Mr. Austin's workplace injury treatment.  Jessica Siron also requested to meet with Mr. Austin in person, on *1.13.20*, the day before Mr. Austin escalated his formal complaints to Sr. Hr. Officer Woodard on *1.14.20* (*as a compliment and showing interest in implementing-correcting his formal Health & Safety complaints submitted directly to them*).

24        Although, Mr. Austin utilized a proactive solution focused conversational style to report Health and Safety problems he personally experienced (*including workplace injury and need for his full personnel file including all injury reports*), and observed, he made clear that he was aware of the larger context of Tesla Motors, Inc.'s OSHA, Health and Safety violations.  Mr. Austin made clear he'd observed more than those initially submitted, but wanted to begin the conversation with the simple, easily implementable ideas, before venturing into the more complex (as suggested by leadership-management).  Mr. Austin even included a recent article from a well respected source going in somewhat depth on the topic (*less than a year old at the time: 3.1.19*) with Mr. Austin's complaints-suggestions. See e.g. www.forbes.com/sites/alanohnsman/2019/03/01/tesla-safety-violations -dwarf-big-us-auto-plants-in-aftermath-of-musks-model-3-push/amp/(*Inside Tesla's Model 3 Factory, Where Safety Violations Keep Rising, Alan Ohnsman, Forbes Staff, Senior editor covering cleantech and advanced mobility*):

George Jarvis Austin, Plaintiff (Self-represented)
Austin v. Tesla Motors, Inc. Case No. 3:23-cv-00067-AGT
2107 Montauban Ct., Stockton, CA
209.915.6304, gaustin07@berkeley.edu

"…A review by *Forbes* found 24 investigations by California Occupational Safety and Health Administration inspectors from 2014 to 2018, resulting in fines for 54 violations. These include new penalties that haven't yet hit the national online OSHA database, and they nearly double Tesla's fines over the last five years, to $236,730. They include one of the automaker's biggest fines, assessed after a worker's glove was caught in a torque gun, severing a finger tip, according to the state safety regulator.

By comparison, Nissan's plant in Smyrna, Tennessee, which employs about 8,000 workers, was the subject of eight investigations and received just five violations in the same time period. And Toyota's plant in Georgetown, Kentucky, which also employs about 8,000 workers, was the subject of 13 investigations, resulting in four violations. In California, anyone can call in a probe over safety; many don't result in fines, but some produce multiple citations. Tesla has contested most of the Cal/OSHA fines with California regulators.

## Safety Slap: Tesla Gets Fined More Than Other Auto Plants

Tesla's cumulative fines for safety violations surpass that of 10 major U.S. auto plants over the past five years, all of which currently produce more vehicles than the Fremont factory.

| Company | Plant Location | Employees | Production Capacity[1] | OSHA Violations 2014-18 | OSHA Fines |
|---|---|---|---|---|---|
| BMW | Spartanburg, SC | 11,000 | 480,000 | 0 | $0 |
| Nissan | Smyrna, TN | 8,000 | 640,000 | 5 | $33,700 |
| Toyota | Georgetown, KY | 8,000 | 550,000 | 4 | $0 |
| Ford | Kansas City, MO | 7,320 | 490,000 | 4 | $29,918 |
| Honda | Marysville, OH | 4,200 | 440,000 | 0 | $0 |
| GM | Arlington, TX | 4,125 | 350,000 | 0 | $0 |
| Hyundai | Montgomery, AL | 3,000 | 399,500 | 0 | $0 |
| Subaru | Lafayette, IN | 5,700 | 340,000 | 0 | $0 |
| Kia | West Point, GA | 2,700 | 340,000 | 3 | $9,180 |
| Mercedes-Benz | Tuscaloosa, AL | 3,800 | 300,000 | 2 | $16,741 |
|  |  | 57,845 | 4,329,500 | 18 | $89,539 |
| Tesla | Fremont, CA | 15,000[2] | 500,000[3] | 54 | $236,730 |

[1]Estimated. [2]Employment figure for Fremont is as of December, 31, 2018 and includes contract workers. [3]Tesla's actual production in 2018 was approximately 254,000.

…..the assembly lines that produce Tesla's Model 3s and $79,000-and-up Model S sedans and X SUVs…It has been the target of more investigations into workplace safety and has incurred more fines than its rivals' main U.S. auto plants in the past half decade.

Even accounting for its larger workforce, the violations and fines at the Tesla factory, in a commuter suburb of San Francisco, dwarfed the total for 10 big U.S. auto plants, including those of BMW, Ford and GM. They employ about 58,000 workers altogether and incurred just 18 OSHA violations in the past five years with less than $90,000 in fines. While reports of gruesome worker injuries have dogged Tesla's auto plant for years

The reported injuries suggest a sometimes chaotic workspace: Safety regulators just assessed a $26,075 fine after a contract worker had his pelvic bone fractured after being hit by a forklift in the recycling area, according to Frank Polizzi, a spokesman for Cal/OSHA. In an August 2018 incident, a Tesla's rear hatch door violently dropped onto the back of an employee as he was caulking the trunk, according to a report by the Center for Investigative Reporting. The worker injured in that accident later claimed he was denied

George Jarvis Austin, Plaintiff (Self-represented)
Austin v. Tesla Motors, Inc. Case No. 3:23-cv-00067-AGT
2107 Montauban Ct., Stockton, CA
209.915.6304, gaustin07@berkeley.edu

adequate medical care by Tesla's contracted medical clinic. Whistleblower reports from former workers who claimed the safety team underreported injuries ....

... investigators keep charging Tesla with violations. Fines range from $425 for failing to report injuries within a required time period to thousands of dollars for hazardous conditions that resulted in serious injuries. Tesla's tent-like structure to house an additional production line for the Model 3, hastily erected last summer, resulted in six fines totaling $29,365.

Last year, the annual rate of serious injury—defined as an injury that requires an employee to take time off to recover—at Tesla's plant was 4.9 days per 100 workers, a 5% improvement from 2017 but still above the auto industry average of 4.2 days per 100 workers. Including all injuries, Fremont averaged 6.2 per 100 workers last year, unchanged from 2017, based on data Tesla filed with the Department of Labor. That was identical to the overall auto industry rate in 2017.

Reports of strains on Tesla's workers coincided with Musk's relentless push in 2018 to produce more Model 3s, the relatively affordable sedan whose anticipated sales volume underpins Tesla's $55 billion market cap. The intense ramp-up that Tesla undertook from late 2017 through the first half of 2018 to fulfill its goal to make 5,000 Model 3s a week famously prompted Musk to log 120-hour workweeks and sleep on a factory sofa.

Last year, the annual rate of serious injury—defined as an injury that requires an employee to take time off to recover—at Tesla's plant was 4.9 days per 100 workers, a 5% improvement from 2017 but still above the auto industry average of 4.2 days per 100 workers. Including all injuries, Fremont averaged 6.2 per 100 workers last year, unchanged from 2017, based on data Tesla filed with the Department of Labor. That was identical to the overall auto industry rate in 2017.

Reports of strains on Tesla's workers coincided with Musk's relentless push in 2018 to produce more Model 3s, the relatively affordable sedan whose anticipated sales volume underpins Tesla's $55 billion market cap. The intense ramp-up that Tesla undertook from late 2017 through the first half of 2018 to fulfill its goal to make 5,000 Model 3s a week famously prompted Musk to log 120-hour workweeks and sleep on a factory sofa.

...."When I started, if they found one thing you were really good at, you were going to be there for 12 hours a day, five, six, seven days a week," Ochoa said. The 31-year-old resident of Mountain House, California, ended up with carpal tunnel syndrome in both hands, which led to two surgeries and a permanent work restriction to avoid lifting anything heavier than 55 pounds.

....Shelby, in addition to building up her safety team and implementing more aggressive reporting standards, has introduced some less traditional auto industry approaches, such as bringing in athletic trainers and massage tables while encouraging stretching, both before shifts and during lulls, to help reduce strain and repetitive motion injuries.

"Everything started with 'We're going to automate so our injury rates can go really down because we're going to be automated.' Well, we're not automated. We rely on humans to do a lot of the work," Shelby said."

13.    Tesla knows it is illegal to operate on derogatory racial stereotypes, or race in the negative, but still knowingly lied using derogatory stereotypes (*knowing in an anti-Black racially hostile environment their use wouldn't be questioned or checked*

George Jarvis Austin, Plaintiff (Self-represented)
Austin v. Tesla Motors, Inc. Case No. 3:23-cv-00067-AGT
2107 Montauban Ct., Stockton, CA
209.915.6304, gaustin07@berkeley.edu

*by others in power), to worsen already retaliatory- discriminatory actions by ordering Mr. Austin* Blackballed, or Blacklisted with direct orders from Tesla Motors, Inc. leadership that no one communicate or respond to Mr. Austin, and ordered him blocked from all of his own legally mandated information. *Tesla knows the per se legal violations Mr. Austin requested to be corrected with lower management, then made formal complaints and escalated (when they failed their duties owed and did not make corrections), were illegal on their face.* However, showing utter disrespect for the law, their own word (as outlined in their own policies) and ultimately Mr. Austin's rights they, Tesla Motors, Inc., purposefully did not correct Kronos timekeeping errors, instead *punished (discriminated, retaliated against)* Mr. Austin for abiding by the law, and Tesla Motors Inc. explicitly stated instructions. Tesla Motors Inc. did not provide Mr. Austin's personnel file (although already 30 days late when Mr. Austin escalated complaints on 1.14.20), did not do any of the other agreed upon follow up tasks, instead completely lied and never even provided the results of Mr. Austin's complaints (as their policies mandate).

11.    Tesla Motors, Inc. leadership, with knowledge of the Legal Department, ordered destruction of material evidence (*including Kronos, full personnel file, injury records or reports etc.*) knowing Mr. Austin had escalated complaints to obtain and correct per se legal violations in this information,  and review.   Tesla's Leadership in accord with Legal Department ordered destruction of material evidence in violation of California and Federal law, and its own policies (which

George Jarvis Austin, Plaintiff (Self-represented)
Austin v. Tesla Motors, Inc. Case No. 3:23-cv-00067-AGT
2107 Montauban Ct., Stockton, CA
209.915.6304, gaustin07@berkeley.edu

mandate the law as the *minimum)* threshold for a "do the right thing" company and appear to have done so again after Order 92.

14.     The case is currently in the discovery process, after defeating TSLA's motion to dismiss.  See attached.  After TSLA continued to break the law on what the labor codes required, and the Northern District Standing Order TSLA was Court Ordered to compel (or forced) to disclose to Mr. Austin over 3,300+ pages of direct evidence, admitting, and substantiating all causes of action.  **Note:** TSLA was required, under current law, to provide a significant amount of this information when Mr. Austin requested his personnel file, several hundred time, over 1000+ days, but willfully broke the law.   **Note:** TSLA was required, to provide this information when Mr. Austin filed this case, but still willfully violated the law.  It took a Court Order to Compel for TSLA to do what the Labor Code says is required when a worker asks for it.  From TSLA's 3,300+ pages of disclosures Mr. Austin filed 183 direct pieces of evidence cross referencing, and directly citing TSLA's disclosures. See attached.

.........

"Tesla, as a joint employer similar to [Northern District's and Ninth Circuit's] *Diaz*, willfully and maliciously, violated Federal, and CA, labor codes (and, at this point criminally when Tesla's conduct is taken together under various Labor codes per employment contract requirements in concert with 18 U.S.C. § 241)

Tesla did so by a. intentionally violating mandate to make personnel file available within 30 days for inspection, copy or (if needed) correction (*in a role Tesla's hiring personnel said Mr. Austin is vastly overqualified for*) when Mr. Austin requested initially via geaustin@tesla.com.  Mr. Austin, a Black man (*and survivor of the Black American Holocaust www.abhmuseum.org/about/ what-is-the-black-holocaust/  in the New Jim, and Jane, Crow era*), who 1. suffered on the job injury, 2. was continually being treated in Tesla Clinic, 3. had required augmented work duties/schedule due to injury, 4. logged in complaints to Tesla's Safety committee, Supervisors, HR, and Department of Labor/Industrial Relations before and after being retaliated against (blackballed, and denied access), experienced Tesla's retaliatory blackballing while failing to make accommodations for still seriously injured worker

"Tesla did so by a. intentionally violating mandate to make personnel file available within 30 days for inspection, copy or (if needed) correction (*in a role Tesla's hiring personnel said Mr. Austin is vastly overqualified for*) when Mr. Austin requested initially via geaustin@tesla.com.  Mr. Austin, a Black man (*and survivor of the Black American Holocaust*

George Jarvis Austin, Plaintiff (Self-represented)
Austin v. Tesla Motors, Inc. Case No. 3:23-cv-00067-AGT
2107 Montauban Ct., Stockton, CA
209.915.6304, gaustin07@berkeley.edu

*www.abhmuseum.org/about/ what-is-the-black-holocaust/*  *in the New Jim, and Jane, Crow era*), who 1. suffered on the job injury, 2. was continually being treated in Tesla Clinic, 3. had required augmented work duties/schedule due to injury, 4. logged in complaints to Tesla's Safety committee, Supervisors, HR, and Department of Labor/Industrial Relations before and after being retaliated against (blackballed, and denied access), experienced Tesla's retaliatory blackballing while failing to make accommodations for still seriously injured worker to access his personnel file despite over 50 complaints/requests when asked in November 2019, while still working full time at Tesla.

Because the personnel file is broad under California and Federal Law the respective records Tesla is required to keep and provide to Mr. Austin (**Due December 2019**) is extensive.  See e.g. https://legalaidatwork.org/factsheet/personnel-file/ (Personnel File:  What types of records must employers keep?  Both federal and California state law require employers to keep certain records regarding each individual employee. The outline below shows some of the types of records your employer is generally required to keep, and how long it must keep them: Your name, social security number, and address….Your gender and date of birth….Payroll Records….The employer's log of occupational injuries and illnesses, and reports of them to OSHA….Log of work-related illness or injury for which treatment exceeded first aid….Medical Records).   Personnel file release to Mr. Austin, alone (**Due Dec. 2019**) after his request, and subsequent over 50 complaints, is not only required, but typical of the type of information (in this context) that would be a pre-disclosure requirement for Defendants to Plaintiffs under Northern District's General Order 71 *INITIAL DISCLOSURE PROTOCOLS FOR EMPLOYMENT CASES ALLEGING ADVERSE ACTION* https://www.cand.uscourts.gov/ filelibrary/3308/GO_71_1-16-2018.pdf (*d. The plaintiff's personnel file… maintained by the defendant, including files concerning the plaintiff maintained by the plaintiff's supervisor(s), manager(s), or the defendant's human resources representative(s), irrespective of the relevant time period*).  The fact that Mr. Austin had to sue to have this legal provision enforced after nearly 3 years (Due December 2019), and over 50 complaints after experiencing multiple levels of adverse retaliatory actions toward him, highlights Tesla's as joint employer's attitude, and **willful** refusal to comply with Federal, and California law.   Mr. Austin's request was prior to any legal action taken with over 1000 days lapsing since then (over 30 witnesses, inside and outside Tesla, to provide direct evidence).  Tesla, as a joint employer, willfully and maliciously, violated Federal, and CA, labor codes also by b. retaliating by blocking access (literal blackballing; blacklisting *definitions.uslegal.com/b/blacklist/*  *refers to a register or list that contains the name of persons who for some reason are denied a particular [right] privilege, recognition, service or access.* ), anti-Black racially offensive name calling using 'criminal' as proxy for race, and further deprivation of labor and contract rights, with personnel file including OSHA required injury reports due December 2019 even with extreme grace provided for Tesla ; more than 33 times the absolute maximum allowable time) under FLSA, CA Labor Code Section 1198.5, Ninth Circuit's and Northern District's *Diaz, Cortez, Harris, Ugorji, ZamanChao, Alvarez, Arias, Rosenfield*, and the Supreme Court's *Kasten"*

**Tesla's Violations Are So Blatant Plaintiffs were Granted Summary Judgment**

"The **district court granted (Plaintiff) summary judgment** to Cortez on her claim under California Labor Code § 1198.5. That statute provides that "**[e]very current and former employee, or his or her representative, has the right to inspect and receive a copy of the personnel records** that the employer maintains relating to the employee's performance or to any grievance concerning the employee" **within 30 calendar days** following receipt of a written request. Id. § 1198.5(a); see also id. § 1198.5(b)(1). When Chipotle responded to Cortez's initial request for a copy of her personnel records, it did not turn over Cortez's incomplete 2015 and 2016 performance reviews. These reviews were not produced until February 20, 2018. Although these documents were in Shadix's possession, they were clearly created as part of his management duties at Chipotle, and thus qualified as personnel records. **We affirm the grant of summary judgment to Cortez on her claim under § 1198.5**. "

-      **Cortez v. Chipotle Mexican Grill, Inc., No. 19-56354, at *5 (9th Cir. July 29, 2021)**

Once Mr. Austin made formal requests to Tesla, for full personnel file (including injury records), and they refused to provide by deadline (no later than Dec. 2019; after Mr. Austin suffered on the job; workplace injury) Tesla, as joint employer, owed Mr. Austin, incurred legal and financial liability (i.e. immediate statutory fines).  Mr. Austin made written and auditory requests, in November 2019, and then formal complaints under Federal and State Labor Code regarding record keeping, and retaliation (i.e. blacklisting; blackballing) complaints to Tesla leadership triggered Tesla's affirmative (*specifically defined*) duties owed Mr. Austin under CA Labor code broad definition of personnel file (encompassing Federal  FLSA and OSHA record keeping requirements including injury records)  and their mandatory response providing key records (I.e. complete personnel file including injury records as mandated by OSHA) by Dec. 2019.  Tesla's failure to produce, nor investigate, nor correct retaliatory conduct  after over 1000 days (and at least 50 follow requests/complaints) incurs liability for the company.   See Dckt#22; 1 (Blatant)

George Jarvis Austin, Plaintiff (Self-represented)
Austin v. Tesla Motors, Inc. Case No. 3:23-cv-00067-AGT
2107 Montauban Ct., Stockton, CA
209.915.6304, gaustin07@berkeley.edu

Joint employer Tesla, not only failed its affirmative duties after acknowledging receipt to promptly respond to these complaints, and requests by mandatory deadline under Federal and State Labor Codes , but shortly thereafter retaliated against Mr. Austin with Blackballing, Blacklisting, etc. within 2 months of mandatory deadline.  The Plain Language, Legislative History, Public Policy Intent, Ninth Circuit Precedent all are in alignment that not only Tesla, as a joint employer owed these duties, but that they are in gross, willful, and intentional violation of these duties

…….

### 2.Tesla is Facially Discriminating with Racist, Stereotypical Conduct to deprive

**2.** Tesla, as a joint employer,  facially discriminated (Supreme Court's *Bazemore*; *Ledbetter,* intentional discrimination on its face analogous to facially discriminatory pay structure where each denial of this fundamental contract right creates new cause of action) against Mr. Austin, a Black man (*and survivor of the Black American Holocaust* www.abhmuseum.org/about/what-is-the-Black-holocaust/  *in the New Jim, and Jane, Crow era*), who 1. suffered on the job injury, 2. was continually being treated in Tesla Clinic while working full time at Tesla, and 3. had required augmented work duties/schedule due to injury, was treated in an inferior manner and expressly excluded from multiple rights he is entitled to by virtue of employment contract [including full personnel file in Dec. 2019, right], with anti-Black racist name calling, using criminal as proxy for race, similar to Ninth Circuit's, and Northern District's *Diaz,* to attempt to give Mr. Austin a bad name in job market by discriminatory conduct based on racist stereotypes. See Dckt#16: #2

> "Tesla, as a joint employer,  facially discriminated (intentional discrimination on its face analogous to facially discriminatory pay structure where each denial of this fundamental contract right creates new cause of action) against Mr. Austin, a Black man (*and survivor of the Black American Holocaust* www.abhmuseum.org/about/what-is-the-black- holocaust/  *in the New Jim, and Jane, Crow era*), who 1. suffered on the job injury, 2. was continually being treated in Tesla Clinic while working full time at Tesla, and 3. had required augmented work duties/schedule due to injury, and was treated in an inferior manner, was expressly excluded from multiple rights he is entitled to by virtue of employment contract [including full personnel file in by Dec. 2019, right], with anti-Black racist name calling similar to Ninth Circuit's, and Northern District's *Diaz,* the Supreme Court's *Bazemore,* and *Ledbetter* cited by *Lindroos.  See also Lindroos v. Bernhardt, No. 20-cv-06897-EMC, at \*1 (N.D. Cal. June 7, 2021)* ("when an employer adopts a facially discriminatory pay structure that puts some employees on a lower scale because of race, the employer engages in intentional discrimination whenever it issues a check to one of these disfavored employees. An employer that adopts and intentionally retains such a pay structure can surely be regarded as intending to discriminate on the basis of race." [Laborers employment contract as precisely defined in Federal and California Labor codes mandates equal treatment and  precisely defines temporal provision within 30 days [analogous to pay], every time employer, utilizes facially discriminatory structure it is presumptively intentionally discriminatory [as Tesla did each of the 50+ times Mr. Austin requested/complained/inquired]  ) *See also* London v. Coopers Lybrand, 644 F.2d 811, 817-18 (9th Cir. 1981) (""A former employer is solidly in position to impede a prior employee's reentry into the job market. When that influence is exerted to limit employment opportunities on grounds of `race, color, religion, sex, or national origin,' an evil at which Section 703(a)(1) is unequivocally aimed materializes."595 F.2d at 722. Shehadeh thus recognized that employment discrimination can be effectively practiced by a former employer who, with the intent to discriminate, sets out to give a former employee a bad name in the job market.")

> *Tesla, as joint employer,* used 'criminal as a proxy for race' in the New Jim Crow era, blocking access (literal blackballing; blacklisting *definitions.uslegal.com/b/blacklist/  refers to a register or list that contains the name of persons who for some reason are denied a particular [right] privilege, recognition, service or access*), created hostile work environment similar to *Alfredo Martinez and Justin Page v. Southern California Edison Co. and Edison International Los Angeles Superior Court BC670461 (June 02, 2022)* producing largest verdict in U.S. History ($460 million) (in addition to *Diaz's* public testimony, and holding, verified with signed public affidavits of over 100 Black Tesla Workers providing overwhelming direct evidence of hostile work environment before, during, and after Mr. Austin worked there full time), failed to respond to complaints regarding disparate treatment of Mr. Austin specifically witnessed by over 30 persons who can provide direct evidence, coupled with extreme refusal to comply with, and gross violation of, fundamental labor standards, as part of 1981 right to contract, to provide personnel file within 30 days of request (*in a role Tesla's hiring personnel said Mr. Austin is vastly overqualified for*). Tesla's substandard treatment of Mr. Austin is illuminated as compared with similarly situated others evidencing disparate treatment (I.e. because it is bare minimum requirement

George Jarvis Austin, Plaintiff (Self-represented)
Austin v. Tesla Motors, Inc. Case No. 3:23-cv-00067-AGT
2107 Montauban Ct., Stockton, CA
209.915.6304, gaustin07@berkeley.edu

literally every worker in California) under *42 USC 1981, FLSA, CA Labor Code Section 1198.5, Diaz, Alfredo Martinez and Justin Page v. Southern California Edison Co. and Edison International Jones v. Mayer Co., Lindsey, Bains LLC v. Arco Products Co., Div. of Atlantic Richfield Co., Richardson, Johnson v. Lucent Technologies Inc., Mustafa v. Clark County School Dist, Metoyer, Cordova v. State Farm Ins. Cos., Woods v. Graphic Commc'ns, Rogers v. EEOC, Stringer v. Combe, Pacific Shores Properties, LLC, Jauregui, Adame v. Bank of America, North Pacifica LLC v. City of Pacifica, Mercer v. Southwest Airlines Co., Green v. Mercy House, Allen v. U.S. Bancorp, Brown v. Board of Education (Stigma), Brown v. FPI Mgmt., Inc., Enlow v. Salem-Keizer Yellow Cab Co., Inc., ,Mercer v. Southwest Airlines Co., Wallis v. J.R. Simplot Co., Hishon, Woods v. Graphic Commc'ns, and Ugorji."*

### Tesla facially discriminated against Mr. Austin

Tesla facially discriminated against Mr. Austin by completely excluding, and employing a facially discriminatory structure to deprive fundamental employment contract rights (i.e. precisely defined personnel file in 30 days or less in California) analogous to a facially discriminatory pay structure to Mr. Austin's detriment.   See Dckt#23:1 .        Because Mr. Austin was not only facially discriminated against (by their structure), but endured regular use of racist slurs, racist stereotypical insults, retaliatory conduct, and Tesla "did absolutely nothing to stop it" despite Mr. Austin's over 50+ complaints their conduct mirrors *Swinton v. Potomac Corp* "Upholding a 28:1 [punitive damage] ratio where an employer was found liable for failing to address an employee's claims of daily offensive racial harassment in the workplace" when at least 2 of the 3 highest violations were demonstrated by Tesla in the *BMW's* **"hierarchy of reprehensibility."**

…….

### 3.Tesla is acting in extreme, and literal Bad Faith, ongoingly.

**3.** Tesla, as a joint employer acted in extreme and literal **bad faith** with **willful** labor code, and contract violations dictionary.law.com/ Default.aspx?selected=21  (intentional dishonest act(s) by not fulfilling legal or contractual obligations; violating basic standards of honesty) when knowingly and maliciously violating mandatory labor code rights (right to inspect, copy or correct personnel file, and non-retaliation), as part of the bundle of rights possessed by all similarly situated laborers in California under current Labor law, and failing to prevent retaliation, correct, nor investigate, after over 50 requests for information/complaints, blocking access, or blackballing with dishonest use of racist 'criminal' stereotype as proxy for race to prevent a laborer from enjoying the benefits, privileges, and rights of his employment contract.) Dckt#16: #3

"Tesla, as a joint employer acted in extreme and literal **bad faith** with **willful** labor code, and contract violations https://dictionary.law.com/ Default.aspx?selected=21  (intentional dishonest act(s) by not fulfilling legal or contractual obligations, misleading another, entering into an agreement without the intention or means to fulfill it, or violating basic standards of honesty in dealing with others).  Tesla is violating its duty of good faith and fair dealing, in bad faith when intentionally, willfully, knowingly and maliciously violating mandatory labor code rights (right to inspect, copy or correct personnel file, and non-retaliation), as part of the bundle of rights possessed by all similarly situated laborers in California under current Labor law to deprive Mr. Austin, a Black man (and survivor of the Black American Holocaust www.abhmuseum.org/about/ what-is-the-black-holocaust/ in the New Jim, and Jane, Crow era), who 1. suffered on the job injury, 2. was continually being treated in Tesla Clinic while working full time at Tesla, and 3. had required augmented work duties/schedule due to injury, of required and pertinent information (i.e. personnel file), and failing to prevent retaliation, correct, nor investigate, after over 50 requests for information/complaints, blocking access, or blackballing (an additional negative employment action), in conjunction with discriminatory and intentionally dishonest use of racist 'criminal' stereotype as proxy for race to prevent a laborer from enjoying the benefits, privileges, and rights of his employment contract (including access to injury records after over 1000 days after suffering severe on the job leg injuries by being blocked to his personnel file, and Tesla Clinic where treated).  Tesla's **willful** violations are damaging, demonstrating extreme and egregious bad faith. See  e.g. Walsh v. Wellfleet Commc'ns, No. 20-16385, at *4 (9th Cir. Oct. 14, 2021) ("Despite its apparent awareness of the FLSA and ongoing violations of other labor regulations, Wellfleet took no steps to investigate its compliance. Haro v. City of Los Angeles, 745 F.3d 1249, 1258 (9th Cir. 2014) (stating employers must "affirmative[ly] act ..to assure compliance" …; see also Flores, 824 F.3d at 906 (stating willfulness includes "reckless

George Jarvis Austin, Plaintiff (Self-represented)
Austin v. Tesla Motors, Inc. Case No. 3:23-cv-00067-AGT
2107 Montauban Ct., Stockton, CA
209.915.6304, gaustin07@berkeley.edu

disregard for . . . whether [] conduct was prohibited by the [FLSA]" (quoting Chao v. A-One Med. Servs., 346 F.3d 908, 918 (9th Cir. 2003))....Wellfleet continued to receive ..complaints....Emails established that management "knew the day would come when the State would come knocking at [Wellfleet's] door" for the company's … violations. Because Wellfleet's FLSA violations were **willful, they could not have been committed in good faith**. Scalia, 951 F.3d at 1103 ("[A] finding of good faith is plainly inconsistent with a finding of willfulness." (quoting Chao, 346 F.3d at 920)")

### Tesla's failed duties to frustrate contract with extraneous conduct is Bad Faith

Tesla's extreme Bad Faith is highlighted as the Plain Language, Legislative History, Public Policy Intent, Ninth Circuit Precedent all are in alignment that not only Tesla, as a joint employer owed this legal duty, but that they are violating this incorporated contract provision (duty) via labor code by treating Mr. Austin in substandard manner.  Tesla's gross, willful, and intentional violation of this duty with "extraneous conduct" to "frustrate benefit to employment agreement" by not providing Mr. Austin his personnel files in 30 days after his oral, and written requests (due Dec. 2019) shows a complete lack of good faith (as measured by explicit 30 day standard, along with racist stereotypical name calling using race as proxy to literally blacklist, blackball , in publicly documented hostile anti-Black environment as compared to how other similarly situated persons are treated: over 33 times the absolute maximum time allotted.)See Dckt#24  Because Mr. Austin provided over 50 opportunities, in over 1000 days to correct their intentional actions "conscious of doing wrong" to "frustrate" "[mandatory employment] contract actual benefits [in 30 days as statutorily mandated]" their bad faith becomes even more illuminated. See Dckt#24  When taken in whole Tesla's Bad faith conduct (*extraneous to employment agreement*) shows overwhelmingly "substantial evidence of fraud, deceitful, or dishonest conduct" in multiple areas triggering independent tort by:

- Tesla's deceit (calling Mr. Austin knowingly false racist stereotype of 'criminal' as proxy for race in word,and deed,) by multiple Tesla representatives,
- Tesla's use of racist trope as pretext to discriminate, and
- Tesla's use of modern racist trope to retaliate by literal blacklisting blackballing generally (as in blocking physical access discriminatorily as compared with similarly situated others within short time after requests/complaints), and
- Tesla's discriminatory, and retaliatory blocking access more specifically from accessing his own personnel file owed no later than Dec. 2019 Although similarly situated others are not needed for the analysis, as there is an objective 30 day metric to be measured against (given statutory minimum), Mr. Austin knows personally of multiple others not in Mr. Austin's protected class and similarly situated who received their employment file in the same day, or by the end of the week, when they inquired demonstrating high level disparate, and substandard treatment.
- Tesla's discrimination, and retaliation while Mr. Austin still working full time, injured on the job treated at Tesla clinic (mandating augmented work schedule until employment separation), in a documented hostile work environment,
- Tesla's failure to engage in interactive process for reasonable accommodation to access intentionally withheld critical information,
- Tesla's increasingly more obvious attempts to cover up information, engage in fraud that seeks to offer false pretexts for its wrongful and unlawful tortious conduct, and overtly lie to hide their previous and ongoing wrongdoing
- Tesla's unrealistically harsh, cold, or extreme demonstrated discriminatory policy through their conduct of failure to correct despite over 50 complaints despite public testimony of over 100 Black workers, adverse judgments, and publicly documented hostile anti-Black work environment

California and Federal Law makes clear all these highlighted actions by Tesla constitute Bad Faith.

…………..

### 4.Tesla is acting deceitfully to deprive Mr. Austin, ongoingly (Amended per Dckt. 84).

To accommodate the Court's recommendations, and critiques, Tesla Motors Inc.'s Fraud (Deceit) section is amended, to be well plead, with particularity under Rule 9(b).  See Fed. R. Civ. P. 9(b) (state "with particularity the circumstances constituting fraud.")  See also Lazar v. Superior Court, 12 Cal. 4th 631, 638 (1996) (identifying elements of fraud) See also Order Dckt. 84 ("Identified a misrepresentation that Tesla made to him and on which he relied to his detriment").  Tesla Motors Inc. made at least 3 distinct overt misrepresentations to proximately cause Mr. Austin's reasonable, and actual, reliance on their falsehoods to his immediate, and long term, detriment:

George Jarvis Austin, Plaintiff (Self-represented)
Austin v. Tesla Motors, Inc. Case No. 3:23-cv-00067-AGT
2107 Montauban Ct., Stockton, CA
209.915.6304, gaustin07@berkeley.edu

1. Tesla Motors Inc., as a joint employer, deceived, or made misrepresentations to Mr. Austin, a laborer, that they follow the law. Instead, Tesla violates the law. See Greenamyer Engineering & Technology, Inc. v. Mediscan Research, Ltd. (In re Mediscan Research, Ltd.), 940 F.2d 558, 563 (9th Cir. 1991) ("The California Civil Code provides: Actual fraud, within the meaning of this Chapter, consists of any of the following acts, committed by a party to the contract… to induce him to enter into the contract:. . . . 3. The suppression of that which is true, by one having knowledge or belief of the facts; 4. A promise made without any intention of performing it; or  5. Any other act fitted to deceive.")  Their misrepresentation, or false promise, induced Mr. Austin into a joint employer contract, or employment relationship, with express and implicit promises to follow the most basic standards of labor, and other, law (false promise of law abiding joint employer) including guaranteed production of complete employment file upon request within 30 days (as incorporated into every CA employment contract).   See e.g. Lugosi v. Universal Pictures, 25 Cal.3d 813, 826 (Cal. 1979) ("In the absence of precise provisions of a contract to the contrary, [the] Labor Code … must be read into every employment relationship.")  See also e.g. Williams v. Joseph Phelps Vineyards LLC, No. A127708, at *1 (Cal. Ct. App. Apr. 19, 2011) ("The violation of Labor Code … is a breach of the employment agreement ")  Joint Employment Tesla Motors Inc. makes clear in their continued actions, and inactions, that they had no intention on following through (as demonstrated in their ongoing conduct despite their own, and their legal representation, admissions of those duties being owed).  Mr. Austin relied to his detriment by being induced into joint employment contract with willfully, and maliciously, law breaking employer while work long hours and suffering literal, ongoing, physical injury (without proper mandatory follow up under OSHA, nor Labor Code), time wasted, emotional drain, and complete disrespect of his fundamental rights through ongoing deceitful conduct.  See e.g. Bojorquez v. Gutierrez, No. C 09-03684 SI, at *13-14 (N.D. Cal. Mar. 25, 2010) ("Under California Civil Code § 1709, "One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers.")

    Mr. Austin reasonably, justifiably, and actually, relied on publicly traded, and audited, Joint employer Tesla Motor's Inc's, false promises that they would follow the most basic laws as he consummated the joint employer contract and began working full time at Joint Employer Tesla to his detriment.  See Field v. Mans, 516 U.S. 59, 60 (1995) ("The Restatement (Second) of Torts … provides that a person is justified in relying on a factual representation without conducting an investigation, so long as the falsity of the representation would not be patent upon cursory examination.")  See also See Patera v. Citibank, N.A., 79 F. Supp. 3d 1074, 1085 (N.D. Cal. 2015) ("Actual reliance occurs when the defendant's misrepresentation is an immediate cause of the plaintiff's conduct, altering … legal relations.")   See also Hammes Co. Healthcare, LLC v. Tri-City Healthcare District, 801 F. Supp. 2d 1023, 1042 (S.D. Cal. 2011) ("Reliance may be inferred from the circumstances attending the transaction. Boeken v. Philip Morris Inc., 127 Cal.App.4th 1640, 26 Cal.Rptr.3d 638, 653 (2005).").

2. After initial inducement, through a false promise of a law-abiding joint-employer, Tesla then further deceived, with additional false promises, after the employment relationship began.  See e.g. Montgomery v. Nat'l City Mortg., No. C-12-1359 EMC, at *14 (N.D. Cal. May 31, 2012) ("[c]ertain broken promises of future conduct may . . . be actionable." Id. More specifically, a promise, made without any intention of performing it is actionable. See id. at 158-59 (citing Cal. Civ. Code § 1710(4)). "'A false promise is actionable")  See also e.g. Parapluie, Inc. v. Mills, 555 F. App'x 679, 6 (9th Cir. 2014) ("A promise to do something in the future can give rise to fraud when the promise is made with no intention to perform.)  Tesla Motors Inc.'s leadership, who Mr. Austin made initial request to in Nov. 2019, and subsequent complaints, expressly said they would provide Mr. Austin his full employment file, Kronos data and opportunity to review and correct where needed (as he discovered errors in their system), performance review information (although already assured all positive, and partially viewed in Supervisors notes, computer), injury records and all other information and then did not follow through, nor had any intention of doing so, as reflected in their ongoing conduct.  Tesla Motors Inc. is at least weekly being provided the opportunity to self-correct and provide the full personnel file, by Mr. Austin (which they note), yet is refusing to do so showing their true colors, over, and over again.  Mr. Austin relied to his detriment by being induced into waiting on a willfully, and maliciously, (labor and other) law breaking employer while working long hours including holidays, and suffering literal, ongoing, physical injury (without proper mandatory follow up under OSHA, nor Labor

25 ; **LETTER TO FBI; DOJ.**

George Jarvis Austin, Plaintiff (Self-represented)
Austin v. Tesla Motors, Inc. Case No. 3:23-cv-00067-AGT
2107 Montauban Ct., Stockton, CA
209.915.6304, gaustin07@berkeley.edu

Code), time wasted waiting over 3 years now, emotional drain, and complete disrespect of his fundamental rights through ongoing deceitful conduct.   Mr. Austin reasonably, and actually, relied on the false promises as he continued the joint employer contract and waited patiently while working full time at Joint Employer Tesla, and thereafter after employment separation, wasting his time, energy, efforts while Tesla is intentionally insulting and disrespecting him (and his rights) to his detriment.

3.   After Tesla made false promises to induce joint employment relationship (1.), and then misrepresentation while working full time (2.), Tesla then (3.) took the proverbial cake and made knowingly false misrepresentation to attempt to label Mr. Austin a racist stereotype 'criminal' as pre-text to discriminate, blackball, and not follow up on duties owed him that they had no intention of fulfilling in the first place (as evidenced in their ongoing conduct toward Mr. Austin).  Tesla Motors Inc. took their knowingly false misrepresentation(s) so far as to threaten, coerce, and induce Mr. Austin into not exercising his full range of options, and rights, to get his labor, constitutional and other rights respected.  Because Tesla tried to label him, Mr. Austin went out of his way to not give any fodder to the false racist stereotype, and attempts to intentionally besmirch his good character, and reputation.  See e.g. Engalla v. Permanente Med. Group, Inc., 15 Cal.4th 951, 976-77, 64 Cal.Rptr.2d 843, 938 P.2d 903 (1997) ("It is not . . . necessary that [a plaintiff's] reliance upon the truth of the fraudulent misrepresentation be the sole or even the predominant or decisive factor in influencing his conduct. . . . It is enough that the representation has played a substantial part, and so has been a substantial factor, in influencing his decision.")   See e.g. 1 Witkin, Summary of California Law, Contracts (10th Ed.), §300; citing Rest.2d, Contracts §167. (In assessing actual reliance, one needs to look at the conduct of the plaintiff before the representations were made versus after. If the misrepresentation is an "inducing cause of the party's assent, then actual reliance exists.)   See Gray v. Don Miller & Associates, Inc. (1984) 35 Cal.3d 498, 503 ("In assessing whether one's reliance was justified, the focus is on the plaintiff's belief in light of his own knowledge and experience.")  See e.g. CACI 1907 (all that needs to be shown is that the misrepresentation or concealed fact substantially influenced plaintiff's choice, even if it was not the only reason for his conduct." )

………..

**5. Tesla is grossly negligent, and demonstrating negligence per se, ongoingly.**

**5.** Tesla, as a joint employer, is both grossly negligent, and negligent per se, in extreme violation of Labor code's  requirement for personnel record access, review and correction *and* magnified by its simultaneous intentionally discriminatory conduct and defamatory use of criminal as proxy for race. Dckt#16; #5

"Tesla, as a joint employer, is both grossly negligent, and negligent per se, in extreme violation of Labor code's requirement for personnel record access, review and correction (at this point criminally: Tesla's conduct classifies as a misdemeanor under current labor law) under Royal Ins. Co. of America v. Southwest Marine, Wallace v. Busch Entm't Corp, and Valenzuela.  Tesla's negligence is magnified by its simultaneous intentionally discriminatory conduct and defamatory use of criminal as proxy for race signaling they are hiding something, (literal blackballing; blacklisting definitions.uslegal.com/b/blacklist/  refers to a register or list that contains the name of persons who for some reason are denied a particular [right] privilege, recognition, service or access. ), or outright sabotaging with 'the want of even scant care' or extreme departure from normal mandatory procedure as explicitly outlined in statute (deadline: no more than 30 days vs. now over 1000 days with still no receipt of file in a role Tesla's hiring personnel said Mr. Austin is vastly overqualified for).  The malicious intentionality of conduct is obvious with multiple Tesla leadership (supervisors or higher, HR, Legal, etc.) violating Mr. Austin's, a Black man (and survivor of the Black American Holocaust https://www.abhmuseum.org/about/ what-is-the-black-holocaust/  in the New Jim, and Jane, Crow era), who 1. suffered on the job injury, 2. was continually being treated in Tesla Clinic, and 3. had required augmented work duties/schedule due to injury, Civil Rights (I.e. right to contract 42 USC 1981) in concert.  See e.g. 18 U.S.C. § 241 (Section 241 - Conspiracy against rights: If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same; or….They shall be fined under this title or imprisoned). See also https://www.justice.gov /usao-ma/civil-rights/civil-rights-offenses. See also

George Jarvis Austin, Plaintiff (Self-represented)
Austin v. Tesla Motors, Inc. Case No. 3:23-cv-00067-AGT
2107 Montauban Ct., Stockton, CA
209.915.6304, gaustin07@berkeley.edu

e.g.www.fbi.gov/investigate/civil-rights/federal-civil-rights-statutes (The FBI is able to investigate civil rights violations based on a series of federal laws. ... Title 18, U.S.C., Section 241 - Conspiracy Against Rights.)"

Tesla violated multiple duties of care, especially duties of care as a joint employer, simultaneously proximately causing tremendous harm (i.e.duty to provide personnel file information in 30 days by Dec. 2019, related duty to not discriminate in employment right to contract duty under 42 USC 1981 by disparate or substandard treatment, duty to provide workplace free of harassment, duty to prevent retaliation, duty for two or more persons (Tesla representatives) to not act in concert to willfully interfere, or threaten Federally protected right to employment (and subsequent incorporated rights like right to personnel file), duty to not blackball, blacklist or block access when ongoing contract, and incorporated labor rights, demand the exact opposite behavior, etc. ) See Dckt#26:1

Tesla's intentional acts, omissions, and violations of labor code requirements alone constitute negligence, but when combined with all the other tortious conduct described their liability is magnified. See Dckt#26:2  Even outside of the employment context, without a statutory mandate, a duty exists for an organization (and is negligence if breached) to use reasonable care in handling a request within its "conventional role" (which in this case is a mandatory informational burden of production for personnel file in 30 days). See Dckt#26:3  When over 30 persons can provide direct evidence that Mr. Austin made the complaints/requests repeatedly, and still was not provided this mandatory information after over 50+ complaints, and 1000 days  the obvious negligence, and specifically negligent supervision, becomes more crystal clear. See Dckt#26:4

Because of Tesla's multiple willfully violated duties of care, especially duties of care as a joint employer, including a failed "burden of production [of information]" as a specifically defined duty owed "In the employment context" as "a legal duty of care owed by an employer" their failure  simultaneously and proximately causes tremendous harm "obvious to laymen" (i.e.duty to provide personnel file information in 30 days by Dec. 2019, related duty to not discriminate in employment right to contract duty under 42 USC 1981 by disparate or substandard treatment, duty to provide workplace free of harassment, etc.)See Dckt#26:5  Analogous to Diaz, Tesla as joint employer, owed Mr. Austin duties of care to properly supervise others, respond, investigate, and correct reported issues of disparate treatment in not providing essential required information, (at all or in the time limit mandated: 30 days), as well pretextual racist name calling used to deprive Mr. Austin of essential rights.See Dckt#26:6

Also similar to Diaz, Tesla's lack of response, lack of investigation, lack of supervision, lack of correction, and instead retaliation to Mr. Austin's over 50+ complaints in over 1000 days creates liability and is clear negligence. See Dckt#26:7  Tesla's failure to investigate, at all, despite over 50 complaints, 1000 days, over 100 public affidavits of anti-Black hostile work environment, adverse judgment based on anti-Black hostile work environment, and security personnel relaying the message (in addition to Mr. Austin's direct communications) is a clear failure per anti-discrimination requirements as standards of care for employers. See Dckt#26:8  Although "the most significant immediate measure an employer can take in response to ... a harassment (or discrimination) complaint is launch a prompt investigation" Tesla did the exact opposite and failed their duties.See Dckt#26:9

Tesla did not take either of the two steps, nor "adequately investigate" or investigate at all, nor "take steps to correct" while breaching its duties...."

15.   Civil Rights, Anti-Discrimination, Labor Code, OSHA, Health Safety Code, civil and criminal standards, as well as Joint Employer precise standards of care, mean little if not followed by Employers, especially large Joint, or Singular, Employers like TSLA.  Civil Rights, Anti-Discrimination, Labor Code, OSHA, Health Safety Code, civil and criminal standards, as well as Joint Employer precise standards of care, mean little if not if not enforced by Government Officials,

George Jarvis Austin, Plaintiff (Self-represented)
Austin v. Tesla Motors, Inc. Case No. 3:23-cv-00067-AGT
2107 Montauban Ct., Stockton, CA
209.915.6304, gaustin07@berkeley.edu

especially as TSLA violates sec. 1981, Equal Protection, & Due Process, with

concerns of Public corruption, and officials acting in concert with Susan Illston,

Donna Ryu, Trina Thompson, Edward Chen, Richard Seeborg, Saundra Brown

Armstrong, Maxine M. Chesney, Alex G. Tse, William Alsup, Edward J. Davila, Rita

F. Lin & Yvonne Gonzales Rogers with ongoing conduct reinforcing an anti-Black

male racial caste system based on negative derogatory racist stereotypes outlawed

both criminally, and civilly.

16.    The *ongoing illegal,* & imminent threat of continued conduct fundamentally

violates Mr. Austin's due process rights.  That illegal conduct, *if continued uncheck-*

*-ed*, delegitimizes any subsequent ruling as "judgment [would be] obtained in vio-

-lation of procedural due process [and].. is not entitled to full faith and credit.." ; See

e.g. Griffin v. Griffin, 327 U.S. 220-8 (1946), 66 S. Ct. 556, 90 L. Ed. 635:

> ""A judgment obtained in violation of procedural due process is not entitled to full faith and credit.…. * * *A judgment obtained in violation of procedural due process is not entitled to full faith and credit National Exchange Bank v. Wiley, 195 U.S. 257; Old Wayne Life Assn. v. McDonough, 204 U.S. 8, 23; Baker v. Baker, Eccles Co., 242 U.S. 394, 401."

;North Georgia Finishing, Inc. v. Di-Chem, Inc. 419 U.S. 601 (1975) Cited 619 times:

> "the recent expansion of concepts of procedural due process requires a more careful assessment of the nature of the governmental function served by the challenged procedure and of the costs the procedure exacts of private interests. See, e. g., Goldberg v. Kelly, 397 U.S. 254, 263-266 (1970); Cafeteria Workers v. McElroy, 367 U.S. 886, 895 (1961)."

17.    This is especially true under Supreme Court's *Griffin v. Breckenridge* per the

US African American or Black American experience as the 13th, 14th, and 15th

Amendments were brought forth to explicitly protect Black people's rights, under

the circumstances Mr. Austin's pleadings directly address (and the type of rights

under *imminent threat* by defendants). See e.g. Griffin v. Breckenridge 403

U.S. 88 (1971) Cited 4,194 times:

> "And surely there has never been any doubt of the power of Congress to impose liability on private persons under § 2 of that amendment, "for the amendment is not a mere prohibition of State laws establishing or upholding slavery,

George Jarvis Austin, Plaintiff (Self-represented)
Austin v. Tesla Motors, Inc. Case No. 3:23-cv-00067-AGT
2107 Montauban Ct., Stockton, CA
209.915.6304, gaustin07@berkeley.edu

but an absolute declaration that slavery or involuntary servitude shall not exist in any part of the United States." Civil Rights Cases, 109 U.S. 3, 20. See also id., at 23; Clyatt v. United States, 197 U.S. 207, 216, 218; Jones v. Alfred H. Mayer Co., 392 U.S., at 437-440. Not only may Congress impose such liability, but the varieties of private conduct that it may make criminally punishable or civilly remediable extend far beyond the actual imposition of slavery or involuntary servitude. By the Thirteenth Amendment, we committed ourselves as a Nation to the proposition that the former slaves and their descendants should be forever free. To keep that promise,"Congress has the power under the Thirteenth Amendment rationally to determine what are the badges and the incidents of slavery, and the authority to translate that determination into effective legislation." Jones v. Alfred H. Mayer Co., supra, at 440. We can only conclude that Congress was wholly within its powers under § 2 of the Thirteenth Amendment in creating a statutory cause of action for Negro citizens who have been the victims of conspiratorial, racially discriminatory private action aimed at depriving them of the basic rights that the law secures to all free men."

18.    Because defendant's have each shown individual, and collective, propensity to act in concert to deprive Mr. Ausitn's rights, he proactively took measures to ensure that no Due Process, 18 USC § 241, or 242, or obstructions of Justice would prevent a fair hearing or proceeding. See 18 USC §241 Conspiracy Against Rights: (Unlike most conspiracy statutes, §241 does not require, as an element, the commission of an overt act); 18 USC §242 Deprivation of Rights Under Color of Law:

(This provision makes it a crime for someone acting under color of law to willfully deprive a person of a right or privilege protected by the Constitution or laws of the United States. It is not necessary that the offense be motivated by racial bias or by any other animus. Defendants act under color of law when they wield power vested by a government entity. Those prosecuted under the statute typically include police officers, sheriff's deputies, and prison guards. However other government actors, such as judges, district attorneys, other public officials, and public school employees can also act under color of law and can be prosecuted under this statute.)

19.    Failure to act, when duty and law command to act, constitutes an over act under sec. 241, or 242, and when "actions are likely to affect [a] judicial proceeding" simultaneously constitute obstruction of justice.  See Arthur Andersen LLP v. United States, 544 U.S. 696, 708, 125 S.Ct. 2129, 161 L.Ed.2d 1008 (2005) (interpreting a materially similar subsection of § 1512 as requiring that the defendant have "knowledge that his actions are likely to affect [a] judicial proceeding" in order to have the "requisite intent to obstruct"). ; See e.g. Pugin v. Garland, 143 S. Ct. 1833, 1837 (2023):

("Dictionary definitions, federal laws, state laws, and the Model Penal Code show that federal or state obstruction offenses "relat[e] to obstruction of justice" under § 1101(a)(43)(S) even if the offense does not require that an investigation or proceeding be pending. This extensive body of authority reflects common sense. Individuals can obstruct the process of justice even when an investigation or proceeding is not pending. Indeed, obstruction of justice is often "most effective" when it prevents "an investigation or proceeding from commencing in the first place." Brief for Attorney General 15. ")

George Jarvis Austin, Plaintiff (Self-represented)
Austin v. Tesla Motors, Inc. Case No. 3:23-cv-00067-AGT
2107 Montauban Ct., Stockton, CA
209.915.6304, gaustin07@berkeley.edu

See e.g. Zinerman v. Burch, 494 U.S. 113, 125-26 (1990):

> "The Due Process Clause also encompasses a third type of protection, a guarantee of fair procedure. … In procedural due process claims, the deprivation by state action of a constitutionally protected interest in "life, liberty, or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law. Parratt, 451 U.S., at 537; Carey v. Piphus, 435 U.S. 247, 259 (1978) ("Procedural due process rules are meant to protect persons … from the mistaken or unjustified deprivation of life, liberty, or property")"

Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992):

> "The Due Process provides "a guarantee of fair procedure in connection with any deprivation of life, liberty, or property" by the government."

Kerry v. Din 576 U.S. 86 (2015)   Cited 108 times:

> "Individualized adjudication normally calls for the ordinary application of Due Process Clause procedures. Londoner v. City and County of Denver, 210 U.S. 373, 385–386, 28 S.Ct. 708, 52 L.Ed. 1103 (1908). And those procedures normally include notice of an adverse action, an opportunity to present relevant proofs and arguments, before a neutral decisionmaker, and reasoned decisionmaking. See Hamdi v. Rumsfeld, 542 U.S. 507, 533, 124 S.Ct. 2633, 159 L.Ed.2d 578 (2004) (plurality opinion); see also Friendly, Some Kind of a Hearing, 123 U. Pa. L. Rev. 1267, 1278–1281 (1975). These procedural protections help to guarantee that government will not make a decision directly affecting an individual arbitrarily but will do so through the reasoned application of a rule of law. It is that rule of law, stretching back at least 800 years to Magna Carta, which in major part the Due Process Clause seeks to protect. Hurtado v. California, 110 U.S. 516, 527, 4 S.Ct. 292, 28 L.Ed. 232 (1884)."

20.     The combination of violations in total disregard of Mr. Austin's rights as a

Black male worker admissions of violations of precisely defined statutory standards,

or per se legal violations, refusal to apologize, or correct, violating sec. 1981, Equal

Protection, Due Process rights, and subsequent anti-Black male derogatory racial

caste exclusionary policies, demonstrate their repeated choices to *"mark with a*

*badge of inferiority"* because of Mr. Austin race, and facially discriminate using

derogatory stereotypes, and racist slurs, overabundantly in the workplace.  The

listed officials, in conjunction with Defendant TSLA, have shown repeated

incompetence of the Supreme Court's standards for racial animus, a propensity to

display their own anti-Black male racial animus, made "*non judicial acts*" to

presume outcomes cases, or inter- ference, willfully ignoring Rules of Civil

Procedure to deprive Due Process (displayed through intentionally ignoring

essential facts, hostility & deceit), utilizing un- equal standards to exclude him from

Due Process, Equal Protection because he is a

George Jarvis Austin, Plaintiff (Self-represented)
Austin v. Tesla Motors, Inc. Case No. 3:23-cv-00067-AGT
2107 Montauban Ct., Stockton, CA
209.915.6304, gaustin07@berkeley.edu

Black man. ; See e.g. Pierson v. Ray 386 U.S. 547 (1967) Cited 5,322 times

> "In Ex parte Virginia, 100 U.S. 339, the Court held that a judge who excluded Negroes from juries could be held liable under the Act of March 1, 1875 ( 18 Stat. 335), one of the Civil Rights Acts. The Court assumed that the judge was merely performing a ministerial function. But it went on to state that the judge would be liable under the statute even if his actions were judicial. It is one thing to say that the common-law doctrine of judicial immunity is a defense to a common-law cause of action. But it is quite another to say that the common-law immunity rule is a defense to liability which Congress has imposed upon "any officer or other person," as in Ex parte Virginia, or upon "every person" as in these cases."

Beard v. Udall 648 F.2d 1264 (9th Cir. 1981) Cited 51 times

> "[I]f a judge connives with one of the parties to predetermine the outcome of a judicial proceeding, the other parties' expectations are frustrated. Id. Moreover, the court noted, an agreement by a judge to predetermine the outcome of a proceeding is "not a function normally performed by a judge." Id. Even though the judge's disposition of the proceeding remains a judicial act, under Rankin the prior agreement is deemed the essential cause of any deprivation of federally protected rights. Accordingly, the judge may be liable for damages due to the deprivation."

30.    This letter is to appreciate the work you have already completed, and any ongoing criminal investigations on TSLA, or its co-conspirators, which cannot be confirmed or denied, at present.  As a whistleblower I will keep you in the loop informationally.

Best,

George Jarvis Austin

**George Jarvis Austin**
**s/ George Jarvis Austin, Self Represented, 8/13/24**